# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEWIS BOOKER, )<br><br>Plaintiff, )<br><br>v. )<br><br>DISTRICT OF COLUMBIA )<br>GOVERNMENT, )<br><br>Defendant. ) | Civil Action No. 19-2639 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Lewis Booker, brings this civil action against the defendant, the District of Columbia Government ("the District"), asserting a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a) ("Title VII").[1]  See Complaint ("Compl.") ¶¶ 40–47, ECF No. 1.  Currently pending before the Court is the Defendant District of Columbia's Motion for Summary Judgment ("Def.'s Mot." or the "District's motion"), ECF No. 29.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the

---

[1] The plaintiff also originally alleged discrimination based upon his race and gender in violation of Title VII, see Compl. ¶¶ 3–4, 32–39, as well as violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, see id. ¶¶ 3–4.  However, on November 30, 2020, the Court dismissed these claims, see Order at 10 (Nov. 30, 2020), ECF No. 15, and dismissed in part Count II of the Complaint—which alleges retaliation—"to the extent [that Count II] alleges that the actions enumerated in paragraph [forty-five] of the Complaint constitute actionable claims of retaliation independent of the plaintiff's alleged termination[,]" id. at 11.  Accordingly, the only remaining claims in this case are those alleging retaliation based upon the plaintiff's termination.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Defendant District of Columbia's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"), ECF No. 29; (2) the Memorandum of Points and Authorities in Support of Defendant District of Columbia's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 29; (3) the Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 31; (4) the Plaintiff's Statement of Genuine Issues of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Facts"), ECF No. 31-1; (5) Defendant District of Columbia's Reply in Support of Its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 33; and (6) Defendant District of Columbia's Response to Plaintiff's Statement of Genuine Issues of Material Facts ("Def.'s Resp. to Pl.'s Facts"), ECF No. 33-1.

following reasons that it must grant the District's motion for summary judgment.

## I.        BACKGROUND

### A.        Factual Background[3]

The plaintiff "was hired as a Transportation Planner by the District of Columbia

Department of Transportation ([']DDOT['])[,]" Def.'s Facts ¶ 1, "on December 10, 2000[,]" Pl.'s

Facts ¶ 1; see Def.'s Resp. to Pl.'s Facts ¶ 1.[4]  "In November 2015, [the p]laintiff was detailed

from [the] DDOT's Policy, Planning and Sustainability Administration, later renamed the

Planning and Sustainability Division ([']PSD[']), to [the] DDOT's Infrastructure Project

Management Administration, later renamed the Infrastructure Project Management Division

([']IPMD['])."  Def.'s Facts ¶ 2.  During his time with the IPMD from 2015 to 2018, the plaintiff

---

[3] This Court's Local Civil Rule 7(h)(1) provides that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue" and "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated[.]"  LCvR 7(h)(1). Furthermore, this Court requires that "[t]he party responding to a statement of material facts must (1) restate the movant's statement of undisputed material fact in numbered paragraphs, and (2) immediately following each numbered paragraph state the opponent's response to the stated fact."  General Order for Civil Cases Before the Honorable Reggie B. Walton ¶ 12(b), ECF No. 7 (emphasis added).  Furthermore, under Federal Rule of Civil Procedure 56(e), where "a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the [C]ourt may . . . consider the fact undisputed for purposes of the motion [for summary judgment.]" Fed. R. Civ. P. 56(e)(2); see Fed. R. Civ. P. 56(c) (detailing procedures governing parties' assertions of undisputed facts in the context of a motion for summary judgment).

Here, although the plaintiff provided a statement of genuine issues of material facts along with his opposition to the defendant's motion, see generally Pl.'s Facts, the plaintiff has not directly responded to any of the facts presented in the defendant's statement of facts, compare id., with Def.'s Facts.  Therefore, because the plaintiff failed to comply with the Federal Rules of Civil Procedure and the Local Civil Rules, as well as the Court's General Order, "where [the defendant's] factual assertions are properly supported by the record, as confirmed by the Court's own independent review, the Court shall treat such facts as admitted[,]" Ladd v. Chemonics Int'l, Inc., 603 F. Supp. 2d 99, 105 (D.D.C. 2009), pursuant to Federal Rule of Civil Procedure 56(e)(2).  Accordingly, the Court will draw the operative facts of this case from those articulated by the defendant, see generally Def.'s Facts, as well as facts articulated by the plaintiff that the defendant does not dispute in its response to the plaintiff's facts, see generally Pl.'s Facts; Def.'s Resp. to Pl.'s Facts.

[4] The Court notes that, in the plaintiff's Complaint, he is referred to both with male and female pronouns.  See, e.g., Compl. ¶¶ 3–4.  However, based on the plaintiff's name, as well as the representations regarding his gender made in the plaintiff's opposition, the Court will assume that the plaintiff identifies as a male.  See, e.g., Pl.'s Opp'n at 3 (referring to the plaintiff as "Mr. Booker").

supported the Right of Way ([']ROW[']) Program, which assisted with [the] DDOT's acquisition of [ ] property . . . for use as part of the public right of way and [ ] also . . . review[ed] and revis[ed] the ROW Manual, which outlines policies and procedures for completing ROW acquisitions and transfers[.]

Id. ¶ 3.  "In 2018, [the p]laintiff . . . ask[ed] that his detail with IPMD end and that he be moved to a different division within [the] DDOT."  Id. ¶ 4.

"On November 11, 2018, [the p]laintiff submitted an intake form with the Metropolitan Police Department's [('MPD') Equal Employment Opportunity (']EEO[')] Investigations Division[,]"[5] id. ¶ 36, initially naming DDOT supervisory employees "Ronald Williams [ ], Margaret Crane [ ], Ravindra Ganvir [ ], and Sam Zimbabwe" as individuals who had discriminated and retaliated against him, Pl.'s Facts ¶ 13; see Def.'s Resp. to Pl.'s Facts ¶ 13. "On December 6, 2018, [the p]laintiff met with Renae Lee, an MPD investigator, and submitted a revised intake form in which he . . . [included] only [ ] Crane, a DDOT attorney, and Zimbabwe[,]" Def.'s Facts ¶ 37, "DDOT's Chief Project Delivery Officer," id. ¶ 6, "as named respondents[,]" id. ¶ 37.  Through this EEO intake form, the plaintiff "indicated that he was making a complaint of discrimination based on race, color, and personal appearance[,]" that he "had been discriminated against[,]" and that he had faced "retaliat[ion]" from the named respondents.  Pl.'s Facts ¶ 12; see Def.'s Resp. to Pl.'s Facts ¶ 12.  Specifically, "[i]n the [s]tatement accompanying his EEO complaint, [the plaintiff] explained that he had previously filed a civil rights complaint against Zimbabwe, and that Zimbabwe should not be involved in personnel decisions involving [the plaintiff]."  Pl.'s Facts ¶ 17; see Def.'s Resp. to Pl.'s Facts ¶ 17.  "On December 21, 2018, [Luisa] Nguyen, in her role as DDOT EEO Program Manager,

---

[5] The MPD's "EEO Office conducts investigations of EEO complaints and provides resolutions" and "assists sworn and civilian MPD employees . . . and other D[.]C[.] Government agency employees."  Metropolitan Police Department, Equal Employment Opportunity (EEO) Office, https://mpdc.dc.gov/page/equal-employment-opportunity-eeo-office (last visited Mar. 9, 2023).

emailed Ganvir and Williams to inform them that an EEO complaint has been filed implicating them both[,]" Pl.'s Facts ¶ 21; see Def.'s Resp. to Pl.'s Facts ¶ 21, and subsequently, "[o]n or about January 17, 2019, Nguyen emailed Crane to alert [her] that [the plaintiff] had filed an EEO complaint against [her,]" Pl.'s Facts ¶ 23; see Def.'s Resp. to Pl.'s Facts ¶ 23.  Also, on January 17, 2019, the MPD investigator assigned to investigate the plaintiff's EEO complaint "issued [the p]laintiff an exit letter and a notification of his right to file a formal complaint with [the District of Columbia Office of Human Rights ('DC]OHR[')]."  Def.'s Facts ¶ 38.

On December 10, 2018, during the time period in which the plaintiff was progressing through the MPD's EEO complaint process, "Zimbabwe . . . issued a memorandum reassigning [the p]laintiff from IPMD to PSD[,]" consistent with the plaintiff's request that he be transferred to a different DDOT division.  Id. ¶ 6.  In this new detail, the plaintiff "report[ed] to Anna Chamberlin as his supervisor."  Id.  Between January 17–19, 2019, Ganvir, Williams, Crane, and Chamberlin were all involved—although, to varying extents—in an email exchange in which the plaintiff was discussed.  See Pl.'s Facts ¶¶ 24–26; Def.'s Resp. to Pl.'s Facts ¶¶ 24–26.  On January 22, 2019, Chamberlin "noticed an apparent discrepancy in [the p]laintiff's reported time entry for a date when the District government had been closed due to inclement weather[,]" Def.'s Facts ¶ 9, and "emailed Anthony Wooten, [the] DDOT's snow supervisor, to ask if [the p]laintiff had worked snow duty during the government closure[,]" id. ¶ 10.  "After learning that Chamberlin had contacted Wooten, [the p]laintiff sent Chamberlin an email stating '[y]ou know the saying, "If you look for trouble[,] you'll find it[,]"'" id. ¶ 11 (second alteration in original), a statement which Chamberlin "perceived . . . to be threatening[,]" id. ¶ 12.  The plaintiff "included Chamberl[]in's supervisor, Jim Sebastian, as a 'carbon copy' recipient in the email." Pl.'s Facts ¶ 27; see Def.'s Resp. to Pl.'s Facts ¶ 27.

On February 8, 2019, the plaintiff and Williams, "a Supervisory Civil Engineer in IPMD[,]" Def.'s Facts ¶ 5, and the plaintiff's former supervisor, see id., "exchanged emails regarding [the p]laintiff's transfer of files out from the ROW Program folder on the IPMD share drive on [the] DDOT's server[,]" id. ¶ 13. Ultimately, after the plaintiff "did not commit to transferring all the files back to the IPMD share drive folder [and] instead suggested having a meeting with Williams'[s] two supervisors and a mediator," id. ¶ 15, on February 12, 2019, the plaintiff

> responded to Williams, stating: "I have deleted all of my files from the ROW Program folder as I will not allow anyone to receive credit for the hard work John []Duel, [the p]laintiff's former co-worker in the ROW unit[] and I performed for over [three-and-a-half] years. If you want to assume the role of the ROW Program coordinator for IPMD[-]related project[s,] then you can start your own repository of files[,]"

id. ¶ 16. "[The p]laintiff deleted files from the ROW Program folder on the IPMD share drive, including his proposed revisions to the Right of Way manual that he felt the agency should have adopted." Id. ¶ 17.

Approximately a month and a half later, "[o]n March 28, 2019, [the] DDOT issued an Advanced Written Notice of [the p]laintiff's proposed removal." Id. ¶ 19. Chamberlin's supervisor, Sebastian, "was the proposing official and signatory of the . . . Advanced Written Notice of Removal." Id. ¶ 20. The notice cited three bases for the plaintiff's proposed removal:

> (1) "Conduct prejudicial to the District of Columbia Government: Concealing, removing, mutilating, altering[,] or destroying government records required to be kept by statute, regulation, Mayor's Order, document hold or subpoena, or other similar requirement"; (2) "Failure/Refusal to Follow Instructions: Deliberate or malicious refusal to comply with rules, regulations, written procedures, or proper supervisory instructions"; and (3) "Conduct prejudicial to the District of Columbia Government: Assaulting, fighting, threatening, attempting to inflict or inflicting bodily harm while on District property, or while on duty."

Id. ¶ 21.  "The specification for Cause One detailed [the p]laintiff's email correspondence with

Williams in which he said that he had deleted 'all of my files from the ROW Program folder[,]'"

id. ¶ 22; "[t]he specification for Cause Two detailed [the p]laintiff's email correspondence with

Williams in which he refused to restore all files to the IPMD share drive, culminating in his

deletion of files[,]" id. ¶ 23; and "[t]he specification for Cause Three detailed [the p]laintiff's

January 22, 2019 email to Chamberlin[,]" id. ¶ 24.  After considering the proposed removal and

supporting documentation, "Karen Calmeise, [the] DDOT's assigned hearing officer, . . . issued

a report and recommendation on May 17, 2019, recommending that the agency remove [the

p]laintiff based on Causes One and Two."  Id. ¶ 26.  Finally, "[o]n June 6, 2019, Dorinda Floyd,

[the] DDOT's Chief Administrative Officer, issued a Notice of Final Decision for Proposed

Removal removing [the p]laintiff from his position effective June 14, 2019[,]" id. ¶ 27,

"sustain[ing the p]laintiff's removal for Causes One and Two[,]" id. ¶ 29, and "sustain[ing]

Cause Three but f[inding] that a lesser penalty (a 14-day suspension) would have been more

appropriate 'had [Cause Three] occurred in isolation[,]'" id. ¶ 30.

**B.**     **Procedural Background**

On September 3, 2019, the plaintiff filed his Complaint in this case.  See Compl. at 1.  On

December 13, 2019, the District filed a partial motion to dismiss, see Defendant District of

Columbia's Partial Motion to Dismiss the Complaint at 1, ECF No. 8, which the Court granted

on November 30, 2020, see Order at 10 (Nov. 30, 2020); supra note 1.  Thereafter, the District

filed its Answer to the Complaint on December 14, 2020, see Answer at 1, ECF No. 16, and the

Court held an initial scheduling conference regarding the discovery process on January 26, 2021,

see Order at 1 (Jan. 28, 2021), ECF No. 19.  After the parties concluded discovery on January 13,

2022, see Minute ("Min.") Order (Dec. 1, 2021), ECF No. 26-1, the District filed its motion for

summary judgment on March 25, 2022, <u>see</u> Def.'s Mot. at 1.  The plaintiff filed his opposition on May 11, 2022, <u>see</u> Pl.'s Opp'n at 1, and the District filed its reply on June 2, 2022, <u>see</u> Def.'s Reply at 1.

## II.   STANDARD OF REVIEW

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Steele v. Schafer</u>, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]"  <u>Id.</u>  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial."  <u>Anderson</u>,

477 U.S. at 248 (internal quotation marks omitted).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

### III.    ANALYSIS

The District argues that it is entitled to summary judgment because: (1) "[the p]laintiff cannot establish a prima facie case of retaliation because there is no evidence that any proposing or deciding official had knowledge of his protected activity," Def.'s Mem. at 1, and (2) "[the p]laintiff cannot overcome the District's legitimate, non-retaliatory reasons for his termination[,]" id. at 2.  In response, the plaintiff argues that he "has adduced sufficient facts . . . to not only [(1)] establish a prima facie case of retaliation pursuant to Title VII, but also to [(2)] demonstrate that any alleged 'legitimate' reason offered by [the District] for [his] unlawful termination is purely pretextual."  Pl.'s Opp'n at 3.

When a plaintiff brings a retaliation claim under Title VII and relies on circumstantial evidence to establish an alleged unlawful employment action, as the plaintiff does here, see generally Pl.'s Opp'n, the Court analyzes the claim under the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green.  See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Carney v. Am. Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998) ("Like claims of discrimination, claims of retaliation are governed by the McDonnell Douglas burden-shifting scheme.").  Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing his or her prima facie case of retaliation.  411 U.S. at 802; see Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015); see also Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "If the

plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully [retaliated] against the employee[,]" and "[t]o rebut this presumption, the employer must articulate a legitimate, non-[retaliatory] reason for its action." Lewis v. District of Columbia, 653 F. Supp. 2d 64, 72 (D.D.C. 2009) (citing Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981)).

If the defendant provides legitimate, non-retaliatory reasons for the adverse employment action at issue, "the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus disappear[s] and drops out of the picture." Brady v. Off. of the Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008) (internal quotation marks omitted). The plaintiff must then prove that the defendant's proffered reason was a pretext for retaliation, see McDonnell Douglas, 411 U.S. at 805, by producing "sufficient evidence for a reasonable jury to find that the employer's asserted [ ] non-retaliatory reason was not the actual reason and that the employer intentionally [ ] retaliated against the employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted). However, this Circuit has ruled that a court "can resolve that question in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of [his or] her [prima facie] case[.]" Baylor v. Powell, 847 F. App'x 7, 8 (D.C. Cir. 2021) (quoting Taylor v. Solis, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009)).

Accordingly, the Court will proceed by (1) considering whether there is a genuine issue of material fact as to knowledge of the plaintiff's protected activity on the part of the individuals involved in the termination of his employment, and (2) addressing the plaintiff's argument that the District's asserted legitimate, non-retaliatory reason for terminating his employment was merely pretextual.

A.      **Whether Officials Involved in the Termination of the Plaintiff's Employment Knew of His Protected Activity**

The District argues that the plaintiff "has offered no evidence that Chamberlin, his supervisor; Sebastian, his second-level supervisor and the proposing official of his removal; Calmeise, the hearing officer who recommended his removal; or Floyd, the deciding official who finalized his removal, had any knowledge of his 2018 [ ] EEO complaint."[6]  Def.'s Mem. at 11. In response, the plaintiff argues that the "District was aware of his [EEO] complaint as of December 13, 2018," Pl.'s Opp'n at 16, when "Renae Lee with MPD emailed DDOT employee Luisa Nguyen . . . to notify her of [the plaintiff's] EEO complaint[,]" id. at 10.  The plaintiff also relies on the January 17–19, 2019 email exchange in which Williams, Ganvir, and Chamberlin discussed the plaintiff after Williams and Ganvir received notice that the plaintiff had named them as respondents in his EEO complaint.  See id. at 17–18; see also Pl.'s Facts ¶¶ 24–26; Def.'s Resp. to Pl.'s Facts ¶¶ 24–26.  The plaintiff contends that this email exchange represented a "retaliatory effort against [him]" and that it "occurred less than one month after Williams and Ganvir discovered [the plaintiff's] EEO complaint against them."  Pl.'s Opp'n at 18.

"[T]o establish a prima facie case of retaliation, a plaintiff must show: [(]1) that [he or] she engaged in a statutorily protected activity; [(]2) that the employer took an adverse personnel action; and [(]3) that a causal connection existed between the two."  McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).  Regarding the third element—the only element that the

---

[6] On or about November 18, 2015, the plaintiff also "filed a complaint with the [DCOHR] alleging that he was discriminated against on the basis of race during his tenure in the Planning Division [of the] DDOT[.]"  Def.'s Facts ¶ 31.  Furthermore, the District notes that "[the p]laintiff also apparently submitted a complaint with [the DC]OHR on January 31, 2019."  Def.'s Mem. at 11 n.2.  However, the plaintiff does not rely on either of these alleged complaints as "protected activity" for purposes of his retaliation claim, see generally Pl.'s Opp'n, and instead contends that he "has established that he engaged in activity protected by Title VII in adducing . . . the evidence of his November 2018 EEO Complaint" with the MPD EEO Investigations Division, id. at 16.  Therefore, the Court will only consider the plaintiff's 2018 EEO complaint as the alleged protected activity for purposes of the plaintiff's retaliation claim.

District has challenged in this case—"[a] plaintiff can establish [a] causal connection . . . 'by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity[,]'" Moran v. U.S. Capitol Police Bd., 887 F. Supp. 2d 23, 35 (D.D.C. 2012) (quoting Mitchell, 759 F.2d at 86), i.e., the "'knowledge' and 'timing' requirements[,]" id. "To fulfill the knowledge requirement, the official responsible for ordering the employee's adverse employment action must have known about the protected activity." Id.; see, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (concluding that the plaintiff had not established a prima facie case of retaliation where "there [was] no indication that" the official who formally proposed the plaintiff's adverse employment action "knew about [the plaintiff's protected activity]").

Here, although the plaintiff correctly notes that the "District was aware of his [EEO] complaint as of December 13, 2018," Pl.'s Opp'n at 16; see id., Exhibit ("Ex.") E (Email from Renae Lee to Luisa Nguyen (Dec. 13, 2018) ("Dec. 13, 2018 Email")) at 1–2, ECF No. 31-6 (reflecting an email from MPD investigator Renae Lee to DDOT EEO Program Manager Luisa Nguyen regarding the plaintiff's filing of an EEO complaint), and that "Williams [and] Ganvir received notice that [he] had filed an EEO complaint against them on December 21, 2018," id. at 17; see id., Ex. F (Email Chain Between Luisa Nguyen, and Ronald Williams and Ravindra Ganvir (Dec. 21, 2018–Jan. 3, 2019) ("Dec. 21, 2018–Jan. 3, 2019 Email Exchange")) at 5, ECF No. 31-7 (reflecting an initial email from DDOT EEO Program Manager Lisa Nguyen to Ronald Williams and Ravindra Ganvir stating that "an EEO complaint ha[d] been filed that implicate[d] [them] both"), neither Williams and Ganvir, nor the District as a whole, are the relevant individuals or entities for purposes of "showing that [the plaintiff's] employer had knowledge of [his] protected activity," Mitchell, 759 F.2d at 86. See Holbrook v. Reno, 196 F.3d 255, 263

(D.C. Cir. 1999) (analyzing whether individual decisionmakers had knowledge of the plaintiff's EEO complaint in order to determine whether "the [Federal Bureau of Investigation] 'had knowledge of her protected activity'" (quoting Mitchell, 759 F.2d at 86)); Carter v. Pena, 14 F. Supp. 2d 1, 9–10 (D.D.C. 1997) (declining to impute knowledge of the plaintiff's filing of EEO charges against his employer to the individual supervisors responsible for his adverse employment action, and finding the plaintiff failed to allege a prima facie case of retaliation where "he ma[de] no showing that any of those capable of making employment decisions had knowledge of the[] charges" (emphasis added)).  Rather, Sebastian "was the proposing official and signatory of the . . . Advanced Written Notice of Removal[,]" Def.'s Facts ¶ 20; see Def.'s Mot., Ex. 8 (Advance Written Notice of Proposed Removal) at 12, ECF No. 29-8 (showing the signature of Jim Sebastian), a proposal which was subsequently reviewed and approved first by Calmeise, see Def.'s Facts ¶ 26; Def.'s Mot., Ex. 12 (Hearing Officer's Report/Decision) at 1, ECF No. 29-12 (showing Calmeise's signature on the report and recommendation regarding the plaintiff's proposed removal), and finally by Floyd, see Def.'s Facts ¶ 27; Def.'s Mot., Ex. 13 (Notice of Final Decision for Proposed Removal) at 9, ECF No. 29-13 (showing Floyd's signature on the final notice of removal).  Thus, Sebastian, Calmeise, and Floyd are the relevant "official[s] responsible for ordering the employee's adverse employment action[,]" Moran, 887 F. Supp. 2d at 35; see Clark Cnty. Sch. Dist., 532 U.S. at 273 (considering the official who proposed the plaintiff's adverse employment action a deciding official for purposes of the knowledge requirement).[7]

---

[7] It is possible that Chamberlin, the plaintiff's supervisor at the time of his removal, also constituted a deciding official for purposes of the knowledge requirement, under the "cat's paw" theory, which provides that "a formal decision maker may be an unwitting conduit of another actor's illicit motives."  Walker, 798 F.3d at 1095.  This is evidenced by the fact that she supervised and dealt with disciplinary matters related to the plaintiff, presumably reporting these matters to her supervisor, Sebastian—the official who ultimately proposed the plaintiff's removal. See generally Pl.'s Opp'n, Ex. I (Email Exchange Between Anna Chamberlin and Lewis Booker (Jan. 22–23, 2019)

(continued . . .)

The plaintiff has provided no evidence or suggestion that Calmeise or Floyd knew of his 2018 EEO complaint.  See generally Pl.'s Opp'n; Pl.'s Facts.  The plaintiff does not explicitly contend that Sebastian knew of the EEO complaint, but does highlight the fact that he was "included . . . as a 'carbon copy' recipient[,]" Pl.'s Opp'n at 12, of at least a portion of the email exchange between the plaintiff and Chamberlin concerning the plaintiff's time-sheet issue.  See id., Ex. I (Email Exchange Between Anna Chamberlin and Lewis Booker (Jan. 22–23, 2019) ("Jan. 22–23, 2019 Email Exchange")) at 1–3, ECF No. 31-10.  However, nothing in the content of this email exchange references the plaintiff's 2018 EEO complaint or any other protected activity, but instead it consists entirely of a discussion regarding one of the disciplinary matters which formed part of the basis for the plaintiff's removal.  See generally id., Ex. I (Jan. 22–23, 2019 Email Exchange) (reflecting the email sent by the plaintiff to Chamberlin that Chamberlin regarded as threatening).  Thus, Sebastian's inclusion in that email exchange does nothing to show that he had any knowledge of the plaintiff's protected activity prior to his issuance of the notice of proposed removal.  Furthermore, Sebastian maintains that he had no knowledge that the

---

(. . . continued)
("Jan. 22–23 Email Exchange")), ECF No. 31-10; Def.'s Mot., Ex. 4 (Declaration of Jim Sebastian ("Sebastian Decl.")) ¶¶ 10–16, 19–20, ECF No. 29-4.

However, even if Chamberlin were considered a deciding official for purposes of the knowledge requirement, the plaintiff still has not put forth evidence to show that she had any knowledge of the plaintiff's 2018 EEO complaint. Instead, the plaintiff provides bare assertions that Chamberlin was "conspiring to discipline [him] with Ganvir and Williams after the two had been informed of [the plaintiff's] EEO complaint against them[,]" Pl.'s Opp'n at 13, and references her participation in the January 17–19, 2019 email exchange, which the plaintiff characterizes as both "disparaging[,]" id. at 17–18, and the "initiat[ion] of Williams, Ganvir, and Chamberl[]in's retaliatory effort against [the plaintiff,]" id. at 18.  However, the email exchange conspicuously lacks any reference to the plaintiff's 2018 EEO complaint or any other protected activity, see generally id., Ex. H (Email Exchange Between Ronald Williams, Ravindra Ganvir, and Anna Chamberlin (Jan. 17–19, 2019) ("Jan. 17–19, 2019 Email Exchange")), ECF No. 31-9, and the plaintiff offers no other evidence to suggest that Chamberlin knew of the plaintiff's EEO complaint, see generally Pl.'s Opp'n.  Therefore, even if the Court were to consider Chamberlin a deciding official, the plaintiff has clearly not met his burden to show that she had any knowledge of his protected activity.  See Román v. Castro, 149 F. Supp. 3d 157, 172 (D.D.C. 2016) (noting that, "[w]hile the plaintiff need not present direct evidence of the employer's knowledge at the summary judgment stage, [he or] she must at least put forward 'circumstantial evidence that could reasonably support an inference' of such knowledge" (quoting Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009))).

plaintiff "had submitted an EEO Intake Form with the . . . []MPD[,]" Def.'s Mot., Ex. 4

(Declaration of Jim Sebastian ("Sebastian Decl.")) ¶ 21, ECF No. 29-4, or "met with an MPD

EEO Counselor[,]" id., Ex. 4 (Sebastian Decl.) ¶ 22, "before [he] issued [the plaintiff's]

Advanced Notice of Removal[,]" id., Ex. 4 (Sebastian Decl.) ¶¶ 21–22.

       Based on this record, the Court concludes that the plaintiff has not met his burden to

show a genuine issue of material fact as to the deciding officials' knowledge of the plaintiff's

protected activity prior to his adverse employment action.  See Román v. Castro, 149 F. Supp. 3d

157, 172 (D.D.C. 2016) (noting that, "[w]hile the plaintiff need not present direct evidence of the

employer's knowledge at the summary judgment stage, [he or] she must at least put forward

'circumstantial evidence that could reasonably support an inference' of such knowledge"

(quoting Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009))).  The Court could base its

decision regarding the plaintiff's retaliation claim on this basis alone.  See Baylor, 847 F. App'x

at 8.  However, in order to fully consider the plaintiff's contentions, the Court will also address

the plaintiff's arguments offered to rebut the District's legitimate, non-retaliatory reasons for

terminating his employment.

**B.**      **The Plaintiff's Argument that the District's Asserted Legitimate, Non-Retaliatory Reasons for Terminating His Employment Are Pretextual**

       The plaintiff's argument that the District's asserted legitimate, non-retaliatory reason for

his removal was pretextual is threefold.  First, the plaintiff contends that Williams—who "was

informed on December 21, 2018, that [the plaintiff] had filed an EEO complaint against him and

Ganvir"—made the allegations which formed the basis for the plaintiff's proposed removal.

Pl.'s Opp'n at 21; see generally Def.'s Mot., Ex. 11 (Email Exchange Between Ronald Williams

and Lewis Booker (Feb. 8–12, 2019) ("Feb. 8–12, 2019 Email Exchange")), ECF No. 29-11

(showing the original exchange between Williams and the plaintiff regarding the plaintiff's

deletion of files).  Second,  that "[o]ne month after Williams and Ganvir began working with Chamberl[]in to retaliate against [the plaintiff] for filing an EEO complaint against them, Williams and Chamberl[]in used two recent events to initiate [his] termination" and "Chamberl[]in even went as far as to leave [out] important exculpatory information—a prompt apology email from [the plaintiff]—" in her reports to Sebastian regarding the plaintiff's insubordination.  Pl.'s Opp'n at 22.  And third, that "[the plaintiff] was not afforded the full benefits of the EEO process in line with the pattern or practice of the agency at the time" because DDOT Director Jeff Marootian was never notified.  Id. at 22–23.

To demonstrate that an employer's proffered reason for an adverse employment action was pretextual, a plaintiff must provide evidence from which a reasonable jury could find that the employer's reasons for acting are "unworthy of credence."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affs., 450 U.S. at 256); see Hairston v. Vance-Cooks, 773 F.3d 266, 272 (D.C. Cir. 2014) (noting that showing pretext "requires more than simply criticizing the employer's decision[-]making process").  Furthermore, it is not sufficient for a plaintiff to "show that a reason given for a[n] [ ] action [was] not just, or fair, or sensible[;]" nor is it sufficient to challenge "the correctness or desirability of [the] reasons offered[.]"  Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal quotation marks omitted).  Rather, a plaintiff must provide evidence from which "a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded [retaliatory] motives."  Jackson, 496 F.3d at 707 (citations omitted).

As a preliminary matter, the Court concludes—and the plaintiff does not appear to directly contest, see Pl.'s Opp'n at 21 (characterizing the District's asserted reason as an "allegedly legitimate reason" and an "implausible explanation")—that the District's asserted

reason for its termination of the plaintiff's employment is a legitimate, non-retaliatory reason. The District states that it terminated the plaintiff's employment based upon his "destr[uction of] government records in defiance of a supervisory official's direction that [he] provide [the official] with access to those records." Def.'s Reply at 1. At the very least, this basis constitutes insubordination, which is a "commonly asserted, legitimate, non-[retaliatory] reason[] for taking an adverse employment action." Richardson v. Petasis, 160 F. Supp. 3d 88, 118 (D.D.C. 2015). Thus, having concluded that the District's proffered reason for the plaintiff's removal is a legitimate, non-retaliatory reason, the Court will consider each of the plaintiff's arguments regarding pretext in turn.

First, as to the plaintiff's argument regarding Williams's involvement in forming the basis for the plaintiff's removal, see Pl.'s Opp'n at 21, the Court has already concluded that Williams did not constitute a deciding official for purposes of the plaintiff's retaliation claim. See supra Section III.A. The plaintiff has also not provided any evidence that Sebastian, Calmeise, or Floyd—the individuals who did constitute deciding officials—were somehow "unwitting conduit[s] of [Williams's alleged] illicit motives[,]" Walker, 798 F.3d at 1095. Thus, because Williams was not involved in the decision to terminate the plaintiff's employment, the fact that Williams was notified "on December 21, 2018, that [the plaintiff] had filed an EEO complaint against him[,]" Pl.'s Opp'n at 21, and subsequently was involved in an instance of insubordination on the part of the plaintiff, see Def.'s Mot., Ex. 11 (Feb. 8–12, 2019 Email Exchange), is irrelevant to the determination of whether the District's asserted reasons for the plaintiff's termination were pretextual.

Second, as to the plaintiff's argument that Chamberlin, Williams, and Ganvir conspired to retaliate against him, and that Chamberlin omitted "exculpatory information" in her

communications with Sebastian regarding the plaintiff's disciplinary matters, Pl.'s Opp'n at 22,

the plaintiff has failed to provide any evidence from which a reasonable jury could infer

retaliatory animus on the part of Chamberlin.  Specifically, the communications between

Chamberlin, Williams, and Ganvir do not reference the plaintiff's protected activity, but instead

discuss the plaintiff's continued engagement with the ROW program after being transferred out

of the position in which he was tasked with working on that program.  See generally Pl.'s Opp'n,

Ex. H (Jan. 17–19, 2019 Email Exchange).  Furthermore, as the District correctly notes, see

Def.'s Reply at 8, Chamberlin disclosed what the plaintiff refers to as "exculpatory

information[,]" Pl.'s Opp'n at 22—namely, the plaintiff's subsequent apology to Chamberlin

after his email which she "perceived . . . to be threatening[,]" Def.'s Facts ¶ 12—both "via email

to DDOT senior management on January 23, 2019, . . . and in her written statement about the

underlying incident[,]" Def.'s Reply at 8.  See Pl.'s Opp'n, Ex. J (Email from Anna Chamberlin

to Todd McIntyre (Jan. 23, 2019) ("Jan. 23, 2019 Email")) at 1, ECF No. 31-11 (noting in an

email in which Sebastian was carbon-copied that the plaintiff had apologized); id., Ex. K

(Statement of Anna Chamberlin (Feb. 27, 2019) ("Chamberlin Statement")) at 1, ECF No. 31-12

(noting that Chamberlin "responded via email to [the plaintiff] that [she] did not appreciate his

threatening tone and was only doing [her] due diligence regarding his reported hours" and that

"[a] few days later, he apologized for the email during a meeting between him, [ ] Sebastian, and

[her]").  Moreover, as the Court has already concluded, the plaintiff has not provided sufficient

evidence to establish that Chamberlin knew of the plaintiff's protected activity, see supra note 6,

thus further undercutting the plaintiff's contention that Chamberlin's actions evidence retaliatory

animus.

Finally, as to the plaintiff's argument that he "was not afforded the full benefits of the EEO process in line with the pattern or practice of the agency at the time[,]" Pl.'s Opp'n at 22–23, he has not provided sufficient evidence from which a jury could infer retaliatory motive on this basis. "An employer's failure 'to follow its own regulations and procedures, alone, may not be sufficient to support' the conclusion that its explanation for the challenged employment action is pretextual." Fischbach, 86 F.3d at 1183 (quoting Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982)). And, "[t]his is particularly so where . . . there is no [other] evidence that [retaliation] was the reason for the [adverse employment action]." Johnson v. Wash. Metro. Area Transit Auth., 314 F. Supp. 3d 215, 220 (D.D.C. 2018). Here, the Court has concluded that the other evidence offered by the plaintiff does not create an inference of retaliatory motive and thus, any failure by the District to follow its policies and procedures "may[, based on that conclusion, already] not be sufficient to support" a finding of pretext. Johnson, 679 F.2d at 922.

Moreover, the plaintiff has not clearly established that the District actually failed to follow its policies and procedures. Specifically, in support of his argument, the plaintiff cites only to the testimony of DDOT Director Marootian. See Pl.'s Opp'n at 22–23. However, as the District correctly notes, see Def.'s Reply at 10, Marootian did not identify any failure to follow an official policy or procedure, but merely stated that "disciplinary issues around questions of discrimination[,]" Pl.'s Opp'n, Ex. B (Deposition of Jeff Marootian ("Marootian Dep.")) at 44:9–10, ECF No. 31-3, were "[s]ometimes[,]" id., Ex. B (Marootian Dep.) at 44:12 (emphasis added), "brought to [his] attention[,]" id., Ex. B (Marootian Dep.) at 44:11, and that "there were times when—because of the intensity [of a situation] or just because it was impacting . . . others or [ ] a particular individual[,]" id., Ex. B (Marootian Dep.) at 47:17–19 (emphasis added), he might have "[p]otentially temporarily reassign[ed] [ ] an individual to a different supervisor, and in

some cases potentially putting an individual on administrative leave[,]" id., Ex. B (Marootian

Dep.) at 48:4–7.  Far from showing the existence of a concrete policy or procedure, these

statements evidence only some steps that the DDOT has "[s]ometimes[,]" id., Ex. B (Marootian

Dep.) at 44:12, taken in the past in response to employee disciplinary matters, and the plaintiff

points to no specific policy regarding the DDOT's disciplinary process that would allow the

Court to compare his situation with the normal procedures of his former employer.  See generally

Pl.'s Opp'n; Pl.'s Facts.

   Accordingly, for all of these reasons, the Court concludes that the plaintiff has not

provided evidence from which "a reasonable jury could infer that the [District's] given

explanation was pretextual and that this pretext shielded [retaliatory] motives."  Jackson, 496

F.3d at 707.  Therefore, the Court must grant the District's motion and dismiss the plaintiff's

retaliation claim.

## IV. CONCLUSION

   For the foregoing reasons, the Court concludes that it must grant the District's motion for

summary judgment.

   **SO ORDERED** this 23rd day of June, 2023.[8]

         REGGIE B. WALTON
         United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.